JOSHUA D. HURWIT, ID STATE BAR NO. 9527
UNITED STATES ATTORNEY
**ELLIOT B. WERTHEIM, NY STATE BAR NO. 5312509**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-9794
Email: Elliot.wertheim@usdoj.gov

*Attorneys for the Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>KAREN CANFIELD<br><br>        Defendant. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff United States of America (United States) alleges as follows:

## I.    INTRODUCTION

1.    This is an action by the United States against Defendant Karen Canfield (Canfield) for treble damages and civil penalties for violations of the False Claims Act (FCA), as amended, 31 U.S.C. §§ 3729-3733.

2.    Canfield, a licensed clinical professional counselor in the state of Idaho, is a former employee of KA Health Services LLC. (KA Health)

3.    Between November 2020 and December 2021, Canfield knowingly caused to be presented false or fraudulent Medicaid claims for psychotherapy services.  Canfield also

knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent Medicaid claims for psychotherapy services.

## II.    THE PARTIES

4.    The United States, acting through the United States Department of Health and Human Services (HHS), Centers of Medicare and Medicaid Services (CMS), as well as the State of Idaho, administers the Medicaid program.

5.    Canfield is a resident of Idaho and a former employee of KA Health, a business entity registered in the State of Idaho.

## III.    JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, and 31 U.S.C. §§ 3729, 3730(a), and 3732.

7.    This Court has personal jurisdiction over Canfield because she resides in the District of Idaho, transacted business in the District of Idaho, and engaged in wrongdoing in the District of Idaho.

8.    Venue is proper in the District of Idaho because: (a) Canfield resides and conducted business within the District of Idaho, (b) a substantial portion of the events giving rise to the action occurred in the District of Idaho, and (c) the civil penalties sought by the United States accrued in the District of Idaho.  *See* 28 U.S.C. § 1391(b); 28 U.S.C. § 1395(a); 31 U.S.C. § 3732.

9.    Pursuant to United States District Court for the District of Idaho Local Civil Rule 3.1, venue is proper in the District of Idaho's Southern Division.

## IV.    THE LAW

### A.  The False Claims Act (FCA)

10.    The FCA is the United States' primary litigation tool against fraud perpetrated by those who wrongfully obtain monies from federally-funded contracts, projects, and programs. Consistent with the congressional purpose underlying the FCA, the Supreme Court has noted that the FCA must be interpreted broadly so as to apply to all those who receive government monies to which they are not entitled. *See United States v. Niefert-White Co.*, 390 U.S. 228, 232 (1968).

11.    The FCA provides that a person is liable to the United States Government for three times the amount of damages the Government sustains because of the acts of that person, plus a civil penalty, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

12.    The FCA also provides that a person is liable to the United States Government for three times the amount of damages that the Government sustains because of the acts of that person, plus a civil penalty, for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

13.    Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. 31 U.S.C. § 3729(b)(2)(A).

14.    The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4).

15.    The FCA defines "knowing" and "knowingly" as having actual knowledge that the information is false, or acting with a deliberate ignorance of, or reckless disregard for, the truth or falsity of the information. 31 U.S.C. § 3729(b)(1). The FCA does not require proof of specific intent to defraud. *Id.*

### B.    FACTUAL ALLEGATIONS

16.    From November 2020 through December 2021, Canfield caused KA Health to submit claims to Medicaid for reimbursement for psychotherapy, language interpretation, and transportation services.

17.    Medicaid was the only type of insurance accepted by KA Health.

18.    Most of KA Health's clients were refugees that had recently arrived in the United States and did not speak the English language with fluency.

19.    To provide psychotherapy services to KA Health clients who did not speak English, Canfield and other KA Health psychotherapists worked through language interpreters.

20.    After rendering services, KA Health providers prepared a medical record known as a client note.

21.    KA Health used these client notes to prepare Medicaid claims for psychotherapy and attendant language interpretation services. In some instances, the Medicaid claims also sought payment for transportation services attendant to providing psychotherapy services.

22.    Many of the client notes associated with psychotherapy services purportedly provided by Canfield were false because Canfield did not, in fact, meet with the client, much less provide psychotherapy services to the client.

23.    As a result, Medicaid claims prepared using these false or fraudulent client notes were also false or fraudulent because they sought payment for services that were not rendered.

24.    On numerous occasions, Canfield directed language interpreters to meet with her clients without Canfield being present or otherwise participating in the meeting.

25.    These language interpreters were not licensed or otherwise qualified to provide psychotherapy services.

26.     Canfield and others associated with KA Health subsequently used the language interpreter's account of client meetings to prepare client notes that were then, in many instances, signed by Canfield.  Canfield knew that the client notes were false when she signed them. Specifically, she knew the client notes were false in that they represented she had provided psychotherapy services that she had not, in fact, provided.

27.     KA Health's billing personnel then used these client notes to prepare and present Medicaid claims for psychotherapy and attendant language interpretation services that had not been provided.  These Medicaid claims also sought payment for attendant language interpretation and/or transportation services; this aspect of the Medicaid claims was also false because these services were not, in fact, attendant to psychotherapy services.

28.     As to this practice, Canfield has testified::

    a.  *Question*: So you think that Medicaid allows for billing for psychotherapy services for someone who has no license but is from the same country as the client?

    b.  *Answer*: But they weren't providing psychotherapy. They were talking to them and then talking to me.

    c.  *Question*: But in the case of KA Health, you were then signing the note indicating that you had provided psychotherapy services?

    d.  *Answer*: True. Okay. So here's the deal: Was it ethical? No. Was it legal? Probably not. But when working for KA Health Services, billing was king, push, push, push, all the time, bill, bill, bill. It didn't matter. That's what we were told. And no, there is nothing in writing.

e. *Question*: I understand that that's what you were told. I'm following that. I just want to verify -- and, you know, you being truthful with me really does matter here, at least to me, that you knew that it wasn't ethical and it wasn't legal at the time that you were doing it?

f. *Answer*: Correct.

29. By directing unqualified language interpreters to provide psychotherapy and/or by signing false client notes, Canfield violated the FCA.

30. Canfield did so by signing or causing the signature of false or fraudulent client notes – which in turn served as the basis for submission of false or fraudulent Medicaid psychotherapy, language interpretation, and transportation services claims.

31. The psychotherapy notes and claims were false or fraudulent in so far as they represented that a person qualified to perform psychotherapy services provided treatment to a client when, in fact, no such person treated the client.

32. The language interpretation and transportation services claims were fraudulent in so far as they were attendant to a worthless service, namely, the provision of so-called psychotherapy services by an unqualified language interpreter.

33. The United States would not have paid claims for psychotherapy or attendant language interpretation and transportation services if it had known that the Medicaid beneficiary had not been seen by a qualified psychotherapy services provider.

## CAUSES OF ACTION

### Count I: False or Fraudulent Claims
**(False Claims Act, 31 U.S.C. § 3729(a)(1)(A))**

34. The United States re-alleges and incorporates in this Count I, Paragraphs 1 through 35 of this Complaint.

35. Through the acts described above, Canfield knowingly presented, or caused to be presented, to an officer or employee of the United States, false or fraudulent claims in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A).  Specifically, between November 2020 and December 2021, Canfield knowingly caused to be presented false or fraudulent Medicaid claims for psychotherapy, language interpretation, and transportation services.

36. The United States would not have paid claims for psychotherapy or attendant language interpretation and transportation services if it had known that the Medicaid beneficiary had not been seen by a qualified psychotherapy services provider.

37. Each false or fraudulent Medicaid claim that Canfield presented, or caused to be presented, constitutes a separate violation of the FCA.

38. By virtue of the false or fraudulent claims that Canfield presented, or caused to be presented, the United States sustained damages in an amount to be determined at trial, and, therefore, is entitled to treble damages under the FCA in an amount to be proven at trial, plus a civil penalty for each claim.

## <u>Count II:  False Records and Statements</u>
**(False Claims Act, 31 U.S.C. § 3729(a)(1)(B))**

39. The United States re-alleges and incorporates in this Count II, Paragraphs 1 through 35 of this Complaint.

40. Through the acts described above, Canfield knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B), including, but not limited to, false Medicaid claims.

41. Each false or fraudulent Medicaid claim that Canfield made or used, or caused to be made or used, constitutes a separate violation of the FCA.

42. By virtue of the false records and statements that Canfield made or used, or caused to be made or used, to get Medicaid claims paid, the United States sustained damages in an amount to be determined at trial, and, therefore, is entitled to treble damages under the FCA in an amount to be proven at trial, plus a civil penalty for each false record or statement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, prays that this Court enter judgment in its favor and against Defendant granting the United States the following:

(a) The amount of the United States' damages, trebled as required by law, plus such civil penalties as are required by law; and

(b) Such other relief as this Court may deem just and proper, together with interest and costs of this action.

The United States herby demands trial by a jury as to all issues so triable.

Dated this 2nd day of October 2024.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:


*/s/ Elliot Wertheim*
Elliot Wertheim
Assistant United States Attorney