UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>KAREN CANFIELD,<br><br>　　　　　　Defendant. | Case No.  1:24-cv-00460-BLW<br><br>**CONSENT JUDGMENT** |

Plaintiff United States of America and Karen Canfield (Defendant) (collectively referred to herein as the "Parties") filed a Joint Stipulated Motion to Enter Consent Judgment (Dkt. 3). Upon review of the Stipulation, and finding good cause, the Court hereby GRANTS the Stipulation and enters this Consent Judgment.

Therefore, it is HEREBY ORDERED, as follows:

1.　<u>Judgment Amount</u>.  Judgment is hereby entered jointly and severally against Defendants in favor of the United States in the amount of $40,000 ("Judgment Amount"). Defendants are further jointly and severally liable for post-judgment interest accruing at the applicable legal rate as set forth in 28 U.S.C. § 1961, such interest accruing from the date of entry of this Stipulated Consent Judgment until the judgment is paid in full.

2.　<u>Nondischargeable in Bankruptcy</u>.  The Judgment Amount is nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2) and (a)(7).

3.　<u>Judgment Lien</u>.

ORDER - 1

    a. The United States may file a judgment lien on any real property owned by the Defendant at any time after the entry of this Consent Judgment for the full amount owed under the Consent Judgment regardless of payment terms.

    b. The United States shall be free to seek an execution sale of any real property owned by Defendant.

    c. Upon the sale of real property subject to a judgment lien imposed as a result of this Consent Judgment, the United States may seek to collect any amounts still owed by the Defendant under this Consent Judgment from the proceeds of the sale.

    d. The United States shall be free to take other steps to enforce this judgment, including, but not limited to, placing liens on other property – real or personal – owned by the Defendant.

    e. Upon full satisfaction of this Consent Judgment, the United States shall file a Satisfaction of Judgment and mail a copy to Defendant at her last known address.

4.    <u>Quarterly Payment Obligation</u>. Defendants shall pay the Judgment Amount plus interest as follows:

    a. Defendant shall make monthly payments to the United States of not less than $500, beginning on November 1, 2025, and continuing thereafter on the first day of each month (*i.e.*, January 1, February 1, etc.) until the Judgment Amount plus interest is paid in full.

    b. Defendant may make payments of additional amounts beyond the minimum amounts set forth in subparagraphs 4(a) and 4(b) of this Consent Judgment, but

ORDER - 2

       any additional payments made pursuant to this subparagraph shall have no effect on the agreed minimum monthly payment obligation set forth herein.

    c. Defendant shall make payments under this Consent Judgment by electronic funds transfer in accordance with written instructions to be provided by the U.S. Attorney's Office for the District of Idaho.

5. <u>Default</u>.  If Defendants fail to comply with the quarterly payment obligations set forth in paragraph 4 of this Consent Judgment, the following provisions shall apply:

    a. Any payment obligation set forth in paragraph 4 of this Consent Judgment not paid within 10 days of the date upon which the payment is due shall be delinquent;

    b. The United States shall provide written notice of any delinquent payment obligation to Defendant at her last known address;

    c. Defendant shall have 21 days from the date the notice of delinquency described in subparagraph 5(b) is mailed to Defendant to cure the delinquent monthly payment obligation(s) by paying the full amount of the delinquent payment(s);

    d. The failure to timely cure any delinquent monthly payment obligation in accord with the procedures set forth in subparagraph 5(c) shall result in default, causing the full amount of the Consent Judgment and interest, as set forth in paragraph 1 of this Consent Judgment, less all payments that were made prior to default, to become due and payable immediately without further notice to Defendant;

    e. In the event of default, the United States may, at any time and its sole discretion, pursue any remedy, or combination of remedies, authorized by law to collect any amounts still owed by Defendant under this Consent Judgment; and

ORDER - 3

    f.   In the event of default, the United States may enroll the Defendant in the Treasury Offset Program (TOP) such that any and all payments from the United States may be offset against the judgment debt specified herein until the Judgment Amount plus interest is paid in full, including but not limited to payments from the Social Security Administration and tax refunds as allowed by law.

6.   <u>Admission of Liability</u>.  The parties agree that this Consent Judgment constitutes an admission of liability by Defendant. Defendant admits to violating the FCA in the following ways:

    a.   Defendant, an employee of KA Health Services (KA Health) and licensed professional counselor in the State of Idaho, knowingly caused to be presented false or fraudulent Medicaid claims for psychotherapy services.

    b.   Defendant also knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims.

    c.   From November 2020 through December 2021, Defendant caused KA Health to submit claims to Medicaid for reimbursement for psychotherapy, language interpretation, and transportation services.

    d.   Defendant knew that KA Health accepted Medicaid insurance.

    e.   Defendant knew that most of KA Health's clients were refugees that had recently arrived in the United States and did not speak the English language with fluency.

    f.   To provide psychotherapy services to KA Health clients, Defendant was supposed to partner with a language interpreter.

    g.   After services had been rendered, Defendant, in some instances, filled out a portion of a medical record known as a client note.

ORDER - 4

h. Defendant knew that KA Health used these client notes as the basis for submitting reimbursement claims to Medicaid for psychotherapy and attendant language interpretation services.

i. Defendant admits that client notes associated with her clients – and subsequent claims to Medicaid – were false or fraudulent.

j. Defendant admits that these notes were false or fraudulent because Defendant did not, in fact, meet with KA Health clients, much less provide psychotherapy services to the client.

k. Defendant directed language interpreters to meet with KA clients without Defendant being present or otherwise participating in the meeting.

l. Defendant knew that the language interpreters were not licensed or otherwise qualified to provide psychotherapy services.

m. In some instances, Defendant conferred with language interpreters after the latter had met with a KA Health client.

n. Defendant and others associated with KA Health subsequently used the language interpreter's account of client meetings to prepare client notes that were then, in many instances, signed by Defendant. Defendant knew that the client notes were false when she signed them. Specifically, Defendant knew the client notes were false in that they represented she had provided psychotherapy services that she had not, in fact, provided.

o. Defendant knew that KA Health used these client notes as the basis for submitting reimbursement claims to Medicaid for psychotherapy and attendant language interpretation services.

p.  As to the above practice, Defendant testified:

    i.  *Question*: So you think that Medicaid allows for billing for psychotherapy services for someone who has no license but is from the same country as the client?

    ii.  *Answer*: But they weren't providing psychotherapy. They were talking to them and then talking to me.

    iii.  *Question*: But in the case of KA Health, you were then signing the note indicating that you had provided psychotherapy services?

    iv.  *Answer*: True. Okay. So here's the deal: Was it ethical? No. Was it legal? Probably not. But when working for KA Health Services, billing was king, push, push, push, all the time, bill, bill, bill. It didn't matter. That's what we were told. And no, there is nothing in writing.

    v.  *Question*: I understand that that's what you were told. I'm following that. I just want to verify -- and, you know, you being truthful with me really does matter here, at least to me, that you knew that it wasn't ethical and it wasn't legal at the time that you were doing it?

    vi.  *Answer*: Correct.

7.  <u>No Agreement Regarding Tax Characterization</u>.  Nothing in this Consent Judgment constitutes an agreement by the United States concerning the characterization of the amounts paid hereunder for purposes of any proceeding under Title 26 of the Internal Revenue Code or waives any claims of the Internal Revenue Service under Title 26 of the Internal Revenue Code.

ORDER - 6

8. <u>Costs and Fees</u>.  The parties shall bear their own costs and fees.

IT IS SO ORDERED.

DATED: October 18, 2024

_____
B. Lynn Winmill
U.S. District Court Judge

ORDER - 7